WINSTON JONES, as Assignee of THE BANK OF MOBILE, Appellant, *v.* THE MERCHANTS' NATIONAL BANK of the City of New York, Respondent, and THE BANK OF MOBILE, Appellant.

*Lien of one bank on the securities of another bank in its possession, and on its deposit in an open account — evidence sustaining the verdict of a jury.*

In an action of replevin brought by the assignee for the benefit of creditors of the Bank of Mobile, to recover thirty mortgage bonds issued by the Mobile and Ohio Railroad Company and held by the Merchants' National Bank, and $6,181.48, standing to the credit of the Bank of Mobile in an open account between it and the Merchants' National Bank, it was admitted that the bonds were held by, and that the sum of $6,181 48 was on deposit in, the Merchants' National Bank, but it was alleged that on May 15, 1884, the firm of Robinson & McMillan made their promissory note, whereby they promised to pay to the order of Danner & Co., five months after date, $8,800 at the Bank of Mobile; that before the note fell due it was indorsed and transferred, for value received, by the Bank of Mobile to the Merchants' National Bank, and that at the maturity thereof it was duly presented for payment, and payment demanded, which was refused, and due notice of presentment, demand and non-payment was given to the Bank of Mobile. It was also alleged that by the custom of banks and bankers, and by virtue of an agreement between the Merchants' National Bank and the Bank of Mobile, the former had a lien on the sum so standing to the credit of the Bank of Mobile, and also on the bonds in its hands, as security for the indebtedness on

said note. The plaintiff denied that the Merchants' National Bank had, by custom or by contract, a lien on the bonds, or on the sum standing to the credit of the Bank of Mobile, but did not deny that his assignor was indebted to the defendant as alleged.

After a review of the evidence the court held that it was sufficient to raise a question of fact for the jury, and that it and the course of dealing between the two banks warranted the verdict rendered in favor of the Merchants' National Bank.

A judgment was entered on the verdict declaring the existence and the amount of the lien of the Merchants' National Bank.

*Held,* that when such judgment was paid the plaintiff would be entitled to receive the property in the hands of the Merchants' National Bank, or if the balance due it on account and sufficient of the avails of the bonds should be applied in payment of the judgment, that the plaintiff would be entitled to the remainder.

When it is too late for a defeated party to set up an irregularity.

APPEAL by the plaintiff, Winston Jones, as assignee of the Bank of Mobile, from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 1st day of December, 1891, upon the verdict of a jury rendered at the New York Circuit; also from an order made at the New York Circuit on the 13th day of November, 1891, granting the defendant, the Merchants' National Bank of the city of New York, an additional allowance of five per cent upon the amount of the verdict; also from an order made at the New York Circuit on the 13th day of November, 1891, denying the motions of the plaintiff that the verdict be set aside and for a new trial upon the minutes; also from an order made at the New York Circuit on the 13th day of November, 1891, denying the plaintiff's motion that the verdict to be entered be settled by the court, and that such settlement be made in a certain form; also from an order made at the New York Circuit on the 13th day of November, 1891, denying the plaintiff's motion for a certificate that the substantial cause of action was the same upon each issue; also from an order made at the New York Special Term on the 1st day of December, 1891, denying the plaintiff's motions that the taxation of costs made by the clerk and his refusal to tax the costs as proposed by the plaintiff be reviewed by the court, and for a new taxation, and for a certificate that the substantial cause of action was the same upon each of the issues in the action; also from an order made at the New York Special Term on the 11th day of

December, 1891, denying the plaintiff's motions that the judgment be opened, vacated and set aside, and that the judgment be settled and entered as the court should, by order, direct ; and also from an order made at the New York Special Term on the 17th day of January, 1893, denying the motion of the plaintiff for a new trial upon the case, made and settled, containing exceptions.

Appeal by the defendant, the Bank of Mobile, from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 1st day of December, 1891, upon the verdict of a jury rendered at the New York Circuit, and also from an order of the Supreme Court made at the New York Special Term on the 11th day of December, 1891, denying the defendant's motions that the judgment be opened, vacated and set aside, and that the judgment be settled and entered as the court should, by order, direct.

This action was brought by the assignee for the benefit of creditors of the Bank of Mobile, who sets out in his complaint two causes of action against the Merchants' National Bank of the city of New York :   (1) In replevin to recover thirty mortgage bonds issued by the Mobile and Ohio Railroad Company, twenty-five for $1,000 each, four for $100 each and one for $500 ; (2) to recover $6,181.48 standing to the credit of the Bank of Mobile in an open account between the banks.

The Merchants' National Bank admits that it holds the bonds, and that it has on deposit to the credit of the Mobile bank $6,181.48, but alleges that May 15, 1884, Robinson & McMillan made their promissory note, whereby, for value received, they promised to pay to the order of Danner & Co., five months after date, $8,800 at the Bank of Mobile.   That before the note fell due it was, for value received, indorsed and transferred by the Bank of Mobile to the defendant, and that at the maturity thereof it was duly presented for payment and payment demanded, which was refused, and due notice of presentment, demand and non-payment was given to the Bank of Mobile.   It also alleges that, by the custom of banks and bankers, and by virtue of an agreement between it and the Bank of Mobile, it has a lien on the sum so standing to the credit of the Bank of Mobile, and also on the bonds in its hands, as security for said indebtedness on said note.

The plaintiff replied, denying that the Merchants' National Bank had, by custom or by contract, a lien on the bonds or on the sum standing to the credit of his assignor, but did not deny that his assignor was indebted to the Merchants' National Bank as alleged in its answer. The Bank of Mobile appeared in the action, but made default, neither answering nor demurring. It was proved on the trial, and it was not controverted, that the Bank of Mobile was indebted to the Merchants' National Bank, as alleged in its answer, and that the amount of the indebtedness, principal and interest, when the verdict was rendered, November 13, 1891, was $13.744.93, which was found by the jury to be due from the Bank of Mobile to the Merchants' National Bank.

After the verdict was rendered, and on the same day, the plaintiff moved for a new trial on the minutes, which was denied, and he also moved that the verdict be settled by the court in a form proposed, which was also denied. The Merchants' National Bank then moved for an additional allowance of five per cent on the verdict, which was granted. Afterwards the plaintiff moved, under section 3234 of the Code of Civil Procedure, for a certificate " that the substantial cause of action was the same upon each issue," which was denied. Costs were taxed by the clerk in favor of the Merchants' National Bank, and thereafter the plaintiff moved that the taxation be set aside and costs taxed in his favor, which was denied. December 1, 1891, a judgment was entered on the verdict adjudging that the Merchants' National Bank recover of the plaintiff, as assignee, $1,218.36 costs, $687.25 of which was the additional allowance granted by the court, and that said bank had a lien on the bonds and money, and was entitled to retain both until its claim of $13.744.93, with interest, should be paid. The plaintiff and the Bank of Mobile then moved to set aside the judgment as entered, and that one in a form proposed be entered, with costs in favor of the plaintiff, which was denied. Afterwards a case was made and settled and the plaintiff moved for a new trial thereon, which was denied.

*Burton N. Harrison,* for the appellant.

*George Zabriskie,* for the respondent.

FIRST DEPARTMENT, OCTOBER TERM, 1893.          [Vol. 72.

FOLLETT, J.:

The question of fact litigated before the jury and on the determination of which the decision of this case turns is, was there an agreement between the banks by which the Bank of Mobile gave the Merchants' National Bank a lien on such bonds, stocks, notes and bills as it might have in its possession belonging to the Bank of Mobile as security for all liabilities which the last-mentioned bank should incur to the Merchants' National Bank?   Neither party asked that the case should be withdrawn from the jury and be decided by the court, both thus conceding that there was a question of fact for the jury.   But whether the verdict is contrary to the weight of evidence is raised for consideration by this court by the appeals from the orders denying motions for a new trial.   From the close of the war of the rebellion to July 8, 1884, the Merchants' National Bank had been the New York correspondent of the Mobile bank, during which time there was an open mutual account between those banks, kept according to the custom of corresponding banks. The Bank of Mobile was accustomed to draw sight drafts or bills on the Merchants' National Bank and send it bills and notes payable in northern cities for collection and credit.   Frequently the New York bank rediscounted notes and commercial paper for the Bank of Mobile, and it appears by the uncontradicted evidence that the universal practice was in case commercial paper, the avails of which had been credited, was not paid, to charge it back to the account of the Bank of Mobile.   Occasionally, the account of the Bank of Mobile was overdrawn for considerable sums.   During the entire existence of this account, the New York bank had in its possession various bonds, securities and bills belonging to the Mobile bank, which were not kept in a box under the control of the last-mentioned bank, but were under the control of the New York bank, the officers of which had access to them at all times.   In other words, the securities were not held by the Merchants' National Bank merely for safe-keeping.   In 1870, the New York bank had in its possession bonds issued by the State of Alabama, which belonged to the Bank of Mobile.   Mr. Vermilye, the president of the Merchants' National Bank, testified in respect to the terms under which those bonds were held, as follows:

" Q.  About the terms on which you held those Alabama bonds,

or whatever bonds you held at that time — were they held upon any agreed terms between your bank and the Mobile bank, and, if so, what were those terms? A. The agreement and understanding between the Bank of Mobile and the Merchants' Bank was: In case of any overdraft, or any credit which was made to them which turned out not to be paid, it was charged back to the account, so far as that went, and if we paid their drafts before they got credit on the bills which they sent on, or any security which we had in hand, we charged them interest on that until the credit came in from the collection."

March 29, 1879, William H. Pratt, then president of the Mobile bank, wrote the president of the Merchants' National Bank in respect to an overdraft, and, among other things, said: "I have considered you fully and amply covered by the lien I gave you on our deposit of Alabama bonds with Williams, Deacon & Co., of London." May 1, 1879, Mr. Pratt again wrote the president of the Merchants' National Bank, referring to certain bonds, and, among other things, said: "We may, however, wish to draw on your bank beyond our remittances, not, however, to exceed, say $30,000, or a value of forty cents on the bonds held by you."

This evidence is not very important, except that it shows that the securities held by the Merchants' National Bank were used by the Bank of Mobile as a means of credit.

The bonds involved in this suit were paid for by the Merchants' National Bank about June 28, 1880, and delivered to it, the sum paid being charged to the account of the Mobile bank. The letter of the latter bank to the former, directing the payment for these bonds states, you will take "said bonds and hold them for our account." The important question is whether the Merchants' National Bank had the right to hold these bonds as security for any liability which the Mobile bank might incur? We will first consider the evidence offered in behalf of the plaintiff on this issue.

Albert C. Danner, the president of the Bank of Mobile in 1884, testified, in answer to the third interrogatory: "Early in June, 1884, I went on to New York and called at the Merchants' National Bank and asked to see the bonds. Mr. Banta, the cashier, showed them to me and they corresponded with the memoranda I had. I left them there with the positive agreement that the Bank

of Mobile could overdraw its account or get discounts from the Merchants' Bank against these bonds as collateral to the amount of $20,000 — I think that was the amount. My recollection is that Mr. Banta gave me or sent to the Bank of Mobile a receipt for these bonds."

"Eighth interrogatory. Please state in detail the circumstances under which a certain note of Robinson & McMillan for $8,800, more particularly described in the answer of the Merchants' Bank herein, was sent to said Merchants' Bank for discount. Please produce and annex to your deposition any letter or writing, or copies of the same, which may have been addressed to said Merchants' Bank by the Bank of Mobile or its officers at the time said note was forwarded for discount?

"A. I have stated in answer to the third interrogatory that I had arranged, as president of the Bank of Mobile, to procure money from the Merchants' National Bank against certain bonds; in addition to this, I also arranged to rediscount paper that the Bank of Mobile might send on for that purpose up to thirty-five or forty thousand dollars. It being understood between Mr. Banta, the cashier of the Merchants' National Bank, and myself, that the Bank of Mobile could borrow from the Merchants' National Bank, and check for same as required up to fifty-five or sixty thousand dollars. I will say right here that while I was in New York arranging this matter, perhaps for three days, I was in the Merchants' National Bank every day. I was informed that Mr. Vermilye, the president, was sick, but before I left New York I met him at the bank and understood from him and Mr. Banta that he approved the arrangement made. * * * With the cashier of the Bank of Mobile I went over the bills receivable in the possession of the Bank of Mobile. The piece of Robinson & McMillan paper referred to I remember selecting. It was sent on because it was a good large amount and believed to be good, and, therefore, thought to be a suitable piece for rediscount in New York. I have no copy of the letter in which said paper was sent on, but I directed such a letter to be written by the cashier of the Bank of Mobile, and a press copy of said letter is attached to the deposition of Mr. Winston Jones in this case, and is here referred to as a part of this answer. It is Exhibit 19."

"Tenth interrogatory. Please state, if you know, whether after

the said note of Robinson & McMillan had been discounted by the Merchants' National Bank, said Merchants' Bank agreed to advance to the Bank of Mobile any money on the faith of the Mobile and Ohio bonds, to recover which this suit is brought ?

" A. The Merchants' National Bank had agreed to loan the Bank of Mobile money on the faith of these bonds, as I have stated before.   This money had not been borrowed by the Bank of Mobile."

Richard F. Manly, the cashier of the Bank of Mobile from January, 1875, to the date of its failure, testified in behalf of the plaintiff.

" Sixth interrogatory.   Did the Bank of Mobile, at any time while you were connected with it, expressly or in any manner pledge the bonds described in Exhibit B, to the Merchants' National Bank to secure any advances, or for any other purpose whatsoever ?

" A. I recall no instance where the Bank of Mobile at any time while I was connected with it, expressly or in any manner, pledged the bonds mentioned in said Exhibit 18 to the deposition of Winston Jones, to the Merchants' National Bank to secure advances, or for any other purpose, except one instance, which is shown and contained in Exhibit 21 to the deposition of Winston Jones in this case, and except that it was generally understood between both banks that the bonds should operate as a security to the Merchants' National Bank for any debt for which the Bank of Mobile should be primarily liable to it."

" Eighth interrogatory.   Did there, at any time, exist any understanding or agreement whatsoever between the Bank of Mobile and the Merchants' Bank, whereby either bank had any lien upon or interest in the property or moneys of the other in its possession, except in cases where such property or moneys were expressly pledged by the owner ?

" A. There was never any formal agreement between the two banks whereby either bank had a lien upon or interest in the property or moneys of the other in its possession, except in cases where the money or property was expressly pledged by the owner, but we sometimes drew on the Merchants' Bank when we did not have funds in its hands, knowing that it held convertible securities of ours, and they paid such drafts, and we supposed that they did this on the faith of having such securities."

The foregoing is the principal evidence given by the plaintiff in respect to the purposes for which the defendant held the bonds in question.

Jacob D. Vermilye, who had been cashier or president of the Merchants' National Bank since 1858, testified in behalf of the defendant as follows in respect to a conversation had with Mr. Pratt, the former president of the Bank of Mobile :

" Q. Did you have conversations with him, either in the same or other interviews, about the securities or bonds or whatever else there was in the hands of the Merchants' Bank belonging to the Mobile bank? A. Allusion was made to that by him and by me.

" Q. What was said in substance? A. The substance of it was that, while the account did not seem to me to be satisfactory, we always had something behind to cover what we might overpay on account, apparently overpay.

" Q. Do you remember what it was? A. Sterling exchange drafts, and if we had bonds at that time, which I think we had, of course it covered that.

" Q. Was there anything said for what indebtedness of the Mobile bank you should look to these securities? A. I cannot answer that question as you have put it. I can only say it was the general understanding. The security that we had was to cover any obligation that they might owe."

Mr. Vermilye and Mr. Cornelius V. Banta, the cashier of the Merchants' National Bank since 1872, both testified that there was no understanding between the officers of the bank limiting the lien of the Merchants' National Bank upon the securities held by it to debts for which the Bank of Mobile was primarily liable.

These are the leading features of the evidence on both sides respecting the existence of the lien, and we think there was sufficient to raise a question of fact for the jury, and that it cannot be said that their determination is contrary to the weight of evidence. We have not overlooked the letters written by the president of the Bank of Mobile in August, 1883, and June, 1884, and the telegram of July 8, 1884. By an examination of the evidence of the officers of the Bank of Mobile it will be seen that they conceded that a lien was given on those securities for such debts as their bank was *primarily* liable for to the Merchants' National Bank. The evidence and

the course of dealing between the two banks warranted the verdict which was rendered.

It is urged in this court, by the learned counsel for the appellant, that the evidence was insufficient to justify the jury in finding that there was a lien upon the balance of the account due from the respondent to the appellant. No such question was presented to the trial court. The court was not asked to instruct the jury to find whether a lien existed upon the bonds, and also whether one existed upon the account. The practice arising out of this controversy has been somewhat peculiar.

In May, 1885, the Merchants' National Bank brought an action against Winston Jones, as assignee, to recover the amount of the note, in which an attachment was issued. May 15, 1885, a stipulation was entered into between the attorneys of the respective parties, by which it was agreed that Jones should forthwith commence an action against the Merchants' National Bank and the Bank of Mobile for the purpose of determining the rights of the parties in the bonds and in the balance due on the account.

Pursuant to this stipulation, this action was begun June 9, 1885. Two causes of action are set out in the complaint; one in replevin, arising out of an alleged wrongful conversion of the thirty bonds, and the other, assumpsit, for the recovery of a money judgment for the amount due on the account. The causes of action require, under the Code, different and inconsistent judgments and executions; the first for a specific recovery of the chattels and for damages, in case they cannot be recovered, and the second for an ordinary money judgment and execution. No objection was raised by the defendant to this misjoinder, probably because of the stipulation entered into between them and on the theory that the sole question to be tried was whether there was a lien or not. The successful party on this issue was entitled to costs. The action, having been brought and tried upon the theory that whether there was a lien or not, was the issue, without objection by either party until after the verdict, it is too late for the defeated party now to raise the question of irregularity.

On this verdict a judgment has been entered declaring the existence and the amount of the defendant's lien. When this judgment

is paid the plaintiff will be entitled to receive the property in the hands of the respondent, or if the balance due it on account and sufficient of the avails of the bonds be applied in payment of the judgment, the plaintiff will be entitled to the remainder.

The plaintiff now insists that he was entitled to a judgment declaring him to be the general owner of the bonds and funds. His general ownership has never been denied, but has been admitted from the outset, and is now admitted, the defendant simply claiming a lien on the bonds and account, the amount of which is fixed by the judgment. It is too late for the plaintiff, after having initiated this irregular procedure, to seek to set aside the judgment because of the irregularity. Under the complaint in this action it was impossible to enter a judgment in strict accordance with the Code, but the one which has been entered sufficiently declares and protects the rights of the litigants and carries out their stipulation.

None of the exceptions taken to the admission or exclusion of evidence, or to the instructions of the court to the jury, are challenged by the learned counsel for the appellant, and they have not been considered.

The judgment and orders should be affirmed, with costs.

VAN BRUNT, P. J., and BARRETT, J., concurred.

Judgment and orders affirmed, with costs.